IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| EUROHOLDINGS CAPITAL & INVESTMENT CORP., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 05 C 1181<br>)<br>) HONORABLE CHARLES R. NORGLE |
| HARRIS TRUST AND SAVINGS BANK., | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, Sr., District Judge

Before the court is Plaintiff Euroholdings Capital & Investment Corporation's Motion to Dismiss Defendant Harris Trust and Savings Bank's Counterclaim. For the following reasons, Plaintiff's Motion to Dismiss is denied.

## I. BACKGROUND

### A. Facts

This case arises out of a dispute between the two largest lenders to a futures commission merchant. That merchant, LFG LLC ("LFG") is not a party to this suit, and has a pending bankruptcy in the Bankruptcy court in the Northern District of Illinois. At issue are events and contracts within a three-year period which preceded LFG's bankruptcy action. Defendant-Counter Plaintiff Harris Trust and Savings Bank ("Harris") lent LFG $13.5 million in June 1998, scheduled for repayment in 2000. Additionally, Plaintiff-Counter Defendant Euroholdings Capital and Investment Corp. ("Euroholdings") lent LFG $5 million in 1999 and another $12 million in early 2000. All of

1

Euroholdings' loans were due to be repaid after Harris' loans.

The parties dispute arose over the following events. Euroholdings alleges that in 2000 it negotiated an agreement to purchase LFG, with Harris' knowledge. The sale eventually fell apart. Then, in mid 2000, LFG was purchased by Refco Group Ltd. ("Refco"), who was introduced to LFG by Harris. Euroholdings was aware of this arrangement. Ultimately, Refco bought LFG for $6.3 million in May 2000. Euroholdings alleges that it was prevented from purchasing LFG as a result of Harris' tactical interference and wrongful conduct. Furthermore, Euroholdings claims that had it purchased LFG, the sale would have been for $36 million, and that Harris induced Euroholdings to invest $17 million by appearing to facilitate Euroholing's purchase of LFG. Euroholdings additionally alleges that Harris simply wanted LFG to hold Eurholdings funds so Harris would be assured payment on its 1998 loan.

Harris denies these claims, and alleges that it changed its strategy because it discovered that LFG was in financial difficulty, and that Harris introduced Refco and LFG at LFG's request. Harris further alleges that the 1998 Harris loan agreement with LFG required letters between LFG and any subsequent lenders acknowledging that Harris would have priority before any other lender. Harris also claims that Euroholdings interfered with the 1998 Harris loan by inducing LFG to enter into side agreements, which sought to secure that Euroholdings would obtain repayment ahead of Harris.

In April 2001, LFG filed for bankruptcy. Initially, Harris was not involved in the proceedings, because it was fully repaid on its loan within one month of the Refco sale. However, in April 2003, Harris was sued by LFG's liquidating trustee for fraudulent preferences. Harris is still involved in that litigation and bases its injury in this case on any subsequent judgment in the ongoing litigation.

Euroholdings received a partial repayment at the start of the bankruptcy proceedings, and

brought adversarial actions in the bankruptcy court where Euroholdings also defended a counterclaim brought by LFG's liquidating trustee, also for fraudulent preferences. In September 2004, Euroholdings settled its litigation in the bankruptcy court, over the objection of Harris.

**B. Procedural History**

On February 28, 2005, Euroholdings filed its initial Complaint. Then, on April 18, Harris filed its Answer to the Complaint and its own four count Counterclaim seeking a declaratory judgment, alleging breach of contract, tortious interference by Euroholdings, and unjust enrichment. Euroholdings filed its Motion to Dismiss the Counterclaim on May 25, 2005. Harris filed its Response on June 22, and Euroholdings replied on July 11. Euroholdings' Motion to Dismiss the Counterclaim is fully briefed and before the court.

## II. DISCUSSION

**A. Standard of Review**

*1. Rule 12(b)(6)*

When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the sufficiency of the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Johnson v. Rivera, 272 F.3d 519, 520-21 (7th Cir. 2001); it does not decide whether the plaintiff has a winning claim. See McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing Leatherman v. Tarrant County, 507 U.S. 163 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); Alliant Energy Corp. v. Bie, 277 F.3d 916, 919 (7th Cir. 2002) ("A complaint need only state the nature of the claim, details can wait for later stages"). Thus, "[a] complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." Szumny v. American General Finance, 246 F.3d 1065, 1067 (7th Cir. 2001) (citations and internal quotation

3

marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ... Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Id. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. All well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See, e.g., Sprint Specturm L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004).

### 2. Rule 12(b)(1)

Additionally, when reviewing a motion to dismiss for lack of standing under Rule 12(b)(1), the "court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." Lee v. City of Chicago, 330 F.3d 456, 468 (7th Cir. 2003). The plaintiff, as the party invoking federal jurisdiction, must establish the required elements of standing: (1) injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) likelihood that the injury will be redressed by a favorable decision. Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### 3. Res Judicata

Res judicata applies where: "(1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity of causes of action; and (3) there is an identity of the parties or their privies." Licari v. City of Chicago, 298 F.3d 664, 666 (7th Cir. 2002); Central States, Southeast and Southwest Areas Pen.Fund v. Hunt Truck Lines, Inc., 296 F.3d 624, 628 (7th Cir. 2002). Res judicata is limited to cases where the plaintiff had a full and fair opportunity to litigate his claim in the previous proceeding. See Licari, 298 F.3d at 666-67. With these principals in mind, we examine Euroholding's Motion to Dismiss.

## B. Euroholding's Motion to Dismiss

It cannot be said, at this juncture, that there are no set of facts upon which Harris may emerge victorious. See Centers v. Centennial Mortgage, Inc., 398 F.3d 930, 933 (7th Cir. 2005) ("Dismissal is proper under Rule 12(b)(6) only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'") (internal citations omitted). Harris has given Euroholdings adequate notice of the pending claims in the Counterclaim. For example, Harris alleges it was injured by Euroholdings' breach of the lender agreement and its tortious interference with the obligations owed to Harris under its loan agreements. See Counterclaim, ¶¶ 48, 50, 51; Def.'s Resp. to Mot. to Dismiss, at 7. Instead of asserting damages on behalf of LFG, Harris has alleged injuries under unique contracts that were caused by Euroholdings' conduct. Id., at 9. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Cler v. Illinois Education Assoc., 423 F.3d 726, 729 (7th Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957)). As a result, Harris' Counterclaim cannot be dismissed under Rule 12(b)(6).

Furthermore, Euroholdings' assertion that the Counterclaim must be dismissed under Rule 12(b)(1) must also be rejected. Euroholding filed its initial lawsuit against Harris. Euroholdings cannot now state that Harris does not have standing to file its own suit upon the same dispute over loans provided to LFG. Harris has established the necessary standing and subject matter jurisdiction to defeat a 12(b)(1) claim. See Lee, 330 F.3d at 468. Harris alleges that it was injured as a result of Euroholdings' tortious interference with the LFG loan. Harris also claims that if not for Euroholdings' interference, it would not have had to defend itself in the bankruptcy court against LFG. See Counterclaim, ¶¶ 48, 50, 51. Therefore, Harris has established the necessary standing, and the

Counterclaim cannot be dismissed under Rule 12(b)(1). See Lee 330 F.3d at 468.

Lastly, Euroholdings alleges that the Counterclaim must be dismissed under the doctrine of res judicata. At its core, Euroholdings' claim is that LFG, through its bankruptcy trustee has settled its litigation against Euroholdings, and as a result, Harris has no remaining causes of action. However, the prior litigation that Euroholdings relies upon fails to satisfy the elements of res judicata. First, the settlement between Euroholdings and LFG was not a final judgment on the merits because it expressly reserves Euroholdings' right to assert claims against Harris, as well as Harris' right to assert claims against Euroholdings. See Pl.'s Mot. to Dismiss, Ex. F, ¶¶ 2, 4. Second, there is no identity among the causes of actions or the parties. See Anchor Glass Container Corp. v. Buschmeier, 426 F.3d 872, 877-78 (7th Cir. 2005). "The causes of action litigated in the first action need not be *identical* to those in a subsequent action for res judicata to apply." Id. Rather, "identity of the causes of action is evaluated by reference to the similarity of the acts complained of, the demand for recovery, and the identity of the witnesses, documents, and facts alleged." Id. Currently, Harris is in the midst of litigation against LFG's trustee in bankruptcy. In the action before this court, Harris seeks to recover funds from Euroholdings for its benefit alone, and not for LFG. Most significantly, however, Harris has not had a full and fair opportunity to litigate its claims in the bankruptcy settlement, where there was an explicit reservation of the right to do so at a future date. As a result, Harris' Counterclaim cannot be dismissed under res judicata grounds. See id. It may be that the issues raised in Euroholdings' Motion are better suited for a motion for summary judgment, "to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

## III. CONCLUSION

For the reasons stated above, Euroholding's Motion to Dismiss the Counterclaim is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: _11-22-05_