UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EUROHOLDINGS CAPITAL AND
INVESTMENT CORP., f/k/a ATHENIAN
CAPITAL HOLDINGS, S.A.

    Plaintiff/Counterdefendant,

v.

HARRIS TRUST & SAVINGS BANK,

    Defendant/Counterplaintiff.

Case No. 05 C 1181

Judge Charles R. Norgle

Magistrate Judge Morton Denlow

## PLAINTIFF'S RENEWED MOTION FOR JUDGMENT
## AS A MATTER OF LAW AS TO DEFENDANT'S COUNTERCLAIM

Plaintiff Athenian brings this renewed motion for judgment as a matter of law pursuant to Rule 50(b) because there was insufficient evidence admitted at trial to support the jury's award of $1,210,851 in compensatory damages to Defendant Harris on its breach of contract counterclaim. Harris maintained that Athenian breached a subordination agreement between Harris and Athenian by receiving payments from third-party LFG prior to LFG repaying its loans from Harris in full. The jury found Athenian liable on that claim. But even assuming that Athenian is liable for breach of contract (and the evidence is to the contrary), judgment as a matter of law is still warranted because there was not enough evidence to show (1) how Athenian's purported breach caused Harris' damages, or (2) even the amount of Harris' alleged damages. The jury was instructed that, in the event it found Athenian liable for breach of contract, it was to award Harris the amount (if any) Harris paid LFG "in settlement" as a result of Athenian's breach. Yet the jury lacked sufficient evidence to make such an award, given that there was no record evidence of: the lawsuit underlying the referenced settlement; the nature of

the allegations against Harris in that lawsuit; the terms of the settlement reached; or the dollar amount supposedly paid by Harris in settlement. The jury, without considering such evidence, could not reasonably have concluded that it was any breach of contract by Athenian that caused Harris to have to pay anything, much less the $1,210,851 that the jury awarded. This Court should thus enter judgment as a matter of law in favor of Athenian on Harris' counterclaim, or at a minimum order a new trial pursuant to Rule 59.

## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) provides: "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment ... the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59...." Fed. R. Civ. P. 50(b). On a Rule 50(b) motion, the court evaluates "whether [the jury] was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict. But there must have been more than a 'mere scintilla' of evidence to support the verdict." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000) (internal citations omitted). *See also Breeden v. Novartis Pharmaceuticals Corp.*, 714 F.Supp.2d 33, 35 (D.D.C. 2010) ("In reviewing the non-moving party's case, the question is not whether there is some evidence, but whether there is legally sufficient evidence.") The Court must "view [the] evidence and the inferences which may be taken from it in the light most favorable to the party against whom the judgment was granted [here, Athenian].... If, reviewing that evidence in the proper light, the nonmoving party did not introduce enough to support her claim, then judgment as a matter of law is correct." *Massey*, 226 F.3d at 924.

2

## BACKGROUND

### A. Harris' Counterclaim

Harris pleaded counterclaims against Athenian for declaratory judgment, breach of contract, tortious interference and unjust enrichment. (Dkt. #7) Harris' counterclaims centered on the costs Harris incurred in defending and settling an "11-count adversary complaint (the 'LFG Complaint') against Harris Bank alleging breach of contract, tortious interference with prospective economic advantage, breach of fiduciary duty, and conversion, seeking in excess of $13.5 million in damages and $25 million in punitive damages. The adversary complaint also sought to avoid the $13.5 million payments as fraudulent and preferential transfers." (Ctrclm. (Dkt. # 7) ¶ 37) Harris alleged that: "As a result of LFG and its predecessor, the LFG Liquidating Trust, litigating claims against the bankruptcy estate, the LFG Liquidating Trust contends that approximately $1.2 million in senior claims should have been paid prior to Harris Bank and the ACH [i.e., Athenian] Parties receiving payment on their subordinated debt." (*Id.* ¶ 38)

### B. Harris' Evidence Regarding the Breach of Contract Counterclaim at Trial

At trial, Harris did not introduce into evidence: the LFG Complaint itself; the fact that LFG sued Harris; the nature of the allegations made by LFG against Harris; or the fact that Harris defended and settled the action. In fact, when counsel for Athenian asked Mr. Belom "As a trustee of LFG's bankruptcy estate, did you have occasion to file a lawsuit against Harris Bank?" counsel for Harris successfully objected, stating at sidebar that the question should instead be put to Mr. Belom "after we put in our case." (Tr. 549:6 – 550:11 (Relevant excerpts of the trial transcript are attached hereto as **Exhibit A**)) The problem is that Harris never did put in its damages case after this juncture. In his closing argument on the point, Harris' counsel

merely referred the jury back to testimony that Mr. Belom had already given (in response to questions from Harris' counsel on cross) *prior* to Athenian being foreclosed from inquiring into the LFG lawsuit and related settlement. (*See* Tr. 1874:3-5 *et seq.*: "Now Harris is repaid, yes. But then there -- the LFG comes up a million-two short on credit for the general creditors. Mr. Belom testified to that, Page 508. ...") But, as Harris' counsel's own foregoing statement at sidebar candidly reveals, not even Harris seriously believed at trial that the referenced testimony of Mr. Belom satisfied the requirement that Harris put in a case on its counterclaim, particularly as to damages.

In fact, the referenced testimony of Mr. Belom fell far short of providing sufficient evidence for Harris. While Mr. Belom acknowledged that he was "familiar with the process to seek repayment from Harris for payment towards the general creditors" (Tr. 508:20-21), he did not proceed to describe that process. And while the evidence relied on by Harris regarding the alleged $1.2 million shortfall of funds available to pay senior creditors was Mr. Belom's agreement, in response to a question from Harris' counsel, that LFG had such a shortfall (Tr. 508:5-14), neither Mr. Belom nor anyone else testified as to how this shortfall was calculated; who calculated it; what caused the shortfall; which particular creditors were affected by the shortfall; or how exactly (if at all) that shortfall related to anything Harris may have paid someone. Indeed, Harris did not introduce any documentary evidence regarding the "shortfall" to LFG's estate.

Likewise, Harris did not attempt to introduce the settlement agreement between LFG's estate and Harris into evidence. The jury did not even learn that there was a settlement of the lawsuit brought by LFG, much less the terms of any such settlement. While Mr. Belom testified that Harris paid "over $1 million," he also testified that he "can't remember the exact amount."

4

(Tr. 509:6-7) And Harris did not provide the jury with any other evidence, testimonial or documentary, regarding who Harris paid and in what amount. In fact, Harris did not even argue for the $1,210,851 amount that the jury awarded. Harris' counsel merely argued – in light of Mr. Belom's foregoing vague statement – that "A million dollars is what the claim is. They [Harris] paid a little more than that. A million dollars is the claim." (Tr. 1875:4-5)

### C. Athenian Moves For Judgment as Matter of Law on Harris' Counterclaims; the Court Submits the Counterclaims to the Jury

Given the paucity of evidence admitted at trial regarding Harris' counterclaims, at the close of Harris' case Athenian moved for judgment as a matter of law on all of Harris' counterclaims. (Dkt. # 220) This Court took the motion under advisement (Tr. 1719:7-15) and then permitted the counterclaims to be considered by the jury. Prior to submission to the jury, Harris dropped its counterclaim for declaratory judgment and its claim for punitive damages. Harris also abandoned its claim for the attorneys' fees it allegedly incurred in defending the LFG Complaint. (Dkt # 222 at 3: "Harris will not claim attorneys' fees as part of its damages.")

Per the parties' agreement, the Court instructed the jury as follows regarding the element of damages on Harris' breach of contract count:

> If you find in favor of Harris on its breach of contract claim, you must then decide how much money, if any, would fairly compensate Harris for Athenian's breach of contract.
>
> ***Harris has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of Athenian's breach.*** In calculating Harris' damages, you should determine that sum of money that will put Harris in as good a position as it would have been in if Athenian had performed all of its promises under the contract. ***Harris seeks damages in the amount it had to pay in settlement to more senior creditors, which, but for Athenian's actions, would have been paid by LFG.***

(Claim Instruction No. 21 (Dkt. # 231; Tr. 1930:16-1931:3 (emphasis added))

Athenian proposed the following instruction regarding damages:

5

> The other element of damages sought by Harris Bank [aside from attorneys' fees] is the amount Harris Bank paid to settle the LFG v. Harris Bank litigation. You are also to consider whether this settlement was the natural and proximate consequence of [Athenian's] breach, and whether the settlement was reasonable. When I say "reasonable", I mean you determine that the terms of the settlement agreement are "fair, proper, just, moderate and suitable under the circumstances."

(Proposed instruction at Dkt. # 123-12 (p. 87/105)[1] Harris objected to this instruction on the grounds of relevance. (Tr. 1820:15-21) This Court, in sustaining the objection, stated:

> There is no way the jury can know whether the settlement was reasonable or not ... *And so that document, by the way, is not in evidence, is it? The settlement agreement? ... All right. So the document itself doesn't speak for itself. It's not in evidence.... There is no way that this jury can know, nor can the Court, whether the settlement was reasonable.* First, without even having the language of the settlement agreement, it would be a mere speculation....There is no agreement in evidence, and I don't think the jury could conceivably know whether a settlement figure is reasonable.

(Tr. 1821:4-1822:16 (emphasis added))

### D. The Jury Returns a Verdict for Harris on Its Breach of Contract Counterclaim, and Judgment Is Entered on the Verdict

The court instructed the jury on Harris' claims for breach of contract, tortious interference and unjust enrichment. The jury decided against Harris on its tortious interference count, and did not reach Harris' unjust enrichment count, but decided in favor of Harris on its breach of contract count. After expressing confusion regarding how to reach a decision on the amount of compensatory damages (Tr. 1952-54), the jury awarded $1,210,851 to Harris as compensatory damages on the breach of contract claim. (Dkt # 228) The Court entered judgment on the verdict on February 10. (Dkt. # 230)

---

[1] This proposed instruction handed to the Court at trial differed from the proposed instruction submitted as part of the pretrial order on 7/11/2008 (Dkt. # 123-12) only in that it was erroneously labeled "Affirmative Defenses Instruction No. 4." The substance of the instruction is the same in both versions. As the authority cited in that proposed instruction reflects, a showing of reasonableness is required. *See Ritter v. Ritter*, 46 N.E.2d 41, 44 (Ill. 1943).

6

## ARGUMENT

### I. There Is Insufficient Evidence of Harris' Purported Damages.

Athenian is entitled to judgment as a matter of law on Harris' breach of contract claim pursuant to Rule 50(b) because, even assuming for the sake of argument that Athenian unjustifiably breached its contract with Harris by receiving payment from LFG before LFG paid more senior creditors, there was insufficient evidence admitted at trial to support the jury's finding that any such breach caused Harris to be damaged in the amount of $1,210,851.

"When one of the *prima facie* elements of a claim is damages and the claimant fails to introduce evidence of those damages, he or she commits a fatal error." *MGE UPS Systems, Inc. v. GE Consumer and Industrial, Inc.*, 622 F.3d 361, 368, 371 (5th Cir. 2010) (reversing district court's denial of defendant's Rule 50(a) motion where plaintiff failed to show damages); *see also Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 40 (1st Cir. 2010) (affirming judgment as a matter of law when claimant failed to present sufficient evidence that defendant's breach of contract caused damages claimed); *Meister v. Medical Engineering Corp.*, 267 F.3d 1123, 1132 (D.C. Cir. 2001) (affirming trial court's grant of judgment as a matter of law where there was insufficient evidence to support the jury's verdict). Here, Harris failed to introduce evidence regarding the element of damages on its contract counterclaim. As the jury was instructed, Harris sought to recover – and needed to establish – the "amount it had to pay in settlement to more senior creditors, which, but for Athenian's actions, would have been paid by LFG." (Dkt. # 231 at Claim Instruction No. 21)[2] Yet:

---

[2] Harris did not seek as damages for Athenian's alleged breach of contract the $1,210,851 that Athenian received from LFG in May 2000 (before Harris took repayment from LFG later that month). Nor could it have, since, as discussed below, there was no causal relationship – proven at trial or otherwise – between this amount and what Harris purportedly paid "in settlement to more senior creditors of LFG."

7

<u>There was *no* record evidence of the underlying LFG Complaint filed against Harris</u>. Harris' vague reference to a "process to seek repayment from Harris" (Tr. 508:20-21) is insufficient to establish the fact that LFG's trustee in bankruptcy filed a lawsuit against Harris.

<u>There was *no* record evidence of a settlement being reached between LFG's estate and Harris</u>. Harris did not even attempt to introduce the settlement agreement between LFG's estate and Harris into evidence. Harris' reference, while cross-examining Mr. Belom, to a payment by Harris "at the end of it" (Tr. 509:2) does not establish that a settlement was reached between Harris and LFG as required by the foregoing jury instruction.

<u>There was *no* record evidence of the amount paid by Harris in supposed settlement of the claims brought by LFG</u>. Mr. Belom's testimony that Harris paid "over $1 million" but that he "can't remember the exact amount" (Tr. 509:6-7) is insufficient to establish: (1) who the payment was made to; (2) why the payment was made (*e.g.* in settlement of LFG's lawsuit); or (3) the dollar amount of the settlement. The jury could not determine, as it was instructed, what amount – if any – Harris "paid to more senior creditors."

<u>There was no record evidence that Harris' purported damages – the amount allegedly paid in settlement – were reasonable</u>. Because there is no record evidence of the settlement itself or the settlement amount, Harris could not meet its burden of proving that the settlement was reasonable (*e.g.* "fair, proper, just moderate [and] suitable under the circumstances"). Black's Law Dictionary 5th Ed. 1983. *See also Ritter, supra.* Indeed, the Court declined to instruct the jury regarding reasonableness of the purported settlement amount *because the settlement itself was not in evidence*. But absent such evidence, the jury could not "reasonably derive its verdict." *Massey*, 226 F.3d at 924. There was insufficient evidence of the settlement amount that Harris allegedly had to pay to more senior creditors, and no evidence whatsoever that it was

$1,210,851, the amount awarded by the jury. Mr. Belom's vague testimony that Harris paid "over a million dollars" and Harris' counsel's argument at closing that "Harris is owed a million dollars" are insufficient to support the jury's award.

## II. There Is No Evidence That Harris' Purported Damages Were Caused By Athenian.

Even if Harris had introduced sufficient evidence as to the amount of its purported damages – which it did not – no factfinder could reasonably conclude that Harris' losses were caused by Athenian. The jury was instructed that:

> ***Harris has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of Athenian's breach.*** In calculating Harris' damages, you should determine that sum of money that will put Harris in as good a position as it would have been in if Athenian had performed all of its promises under the contract. ***Harris seeks damages in the amount it had to pay in settlement to more senior creditors, which, but for Athenian's actions, would have been paid by LFG.***

(Dkt. # 231 at Claim Instruction No. 21) Harris did not meet its burden of proving that its damages "occurred as a direct and natural result of Athenian's breach" or that the amount it paid in settlement to more senior creditors would have been paid by LFG "but for Athenian's actions." There was insufficient evidence of causation to support the jury's verdict.

A breach of contract claim fails where "the alleged breach was not causally related to [the alleged] damage." *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986). *See also Perez v. Z Frank Oldsmobile, Inc.*, No. 97 C 8950, 1999 WL 417447, *1 (N.D. Ill. June 10, 1999), *rev'd on other grounds*, 223 F.3d 617 (7th Cir. 2000) (granting defendant's Rule 50(b) motion where "plaintiff did not produce any evidence to justify finding a causal relationship" between defendant's wrongful conduct and plaintiff's damages).

Here, Harris did not come close to establishing causation. While Mr. Belom agreed that LFG had a "shortfall of about $1.2 million" in paying its general creditors (Tr. 508:5-14), neither Mr. Belom nor anyone else testified, for example:

- That LFG sued Harris to recover such a shortfall (it did not);
- That the alleged shortfall was caused by LFG's payment of money to Athenian (as opposed to LFG's payment of money to Harris and/or other creditors, or the failure of Refco to make required payments upon closing);
- That Harris lost money (*e.g.* settled the LFG action) because Athenian received funds from LFG;
- That the so-called shortfall caused LFG to file for bankruptcy;
- That because LFG filed for bankruptcy, the LFG trustee pursued claims against Harris;
- That, absent LFG filing for bankruptcy, LFG would not have sued Harris;
- That Harris defended against and settled claims by the LFG trustee to recover the shortfall supposedly caused by Athenian; or
- That there were no other intervening causes that caused Harris' alleged loss.

With this gaping hole in proof of causation, there was insufficient evidence to support a finding that Athenian's actions were responsible for Harris' loss. *See Barkan*, 627 F.3d at 40 (affirming judgment as a matter of law when claimant failed to present sufficient evidence that defendant's breach of contract caused damages claimed). The jury could not have reasonably concluded that, but for Athenian's receipt of approximately $1.2 million from LFG, Harris would not have had to pay a settlement amount to "more senior creditors" of LFG.

## CONCLUSION

Harris did not introduce sufficient evidence at trial for a jury to conclude that Athenian's purported breach of its contract with Harris caused Harris damages in the amount of $1,210,851. Accordingly, judgment should be awarded to Athenian pursuant to Rule 50(b) on Harris' breach of contract counterclaim. Alternatively, at a minimum, a new trial should be allowed in light of the insufficiency of evidence discussed above.

March 2, 2011

Respectfully submitted,

EUROHOLDINGS CAPITAL & INVESTMENT CORP.,
f/k/a ATHENIAN CAPITAL HOLDINGS, S.A.

By: /s/ Dina G. Rollman
    One of its attorneys

Thomas D. Brooks
Dina G. Rollman
SPERLING & SLATER, P.C.
55 West Monroe
Suite 3200
Chicago, IL 60603
312-641-3200
312-641-6492 (fax)

# CERTIFICATE OF SERVICE

I, Dina G. Rollman, an attorney, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO DEFENDANT'S COUNTERCLAIM** has been served upon:

> Ronald S. Safer, Esq.
> J. Mark Fisher, Esq.
> Lawrence H. Heftman, Esq.
> Schiff Hardin LLP
> 6600 Sears Tower
> 233 South Wacker Drive
> Chicago, Illinois 60606

via ECF electronic filing this 2nd day of March, 2011

                                      /s/ Dina G. Rollman
                                        Dina G. Rollman